IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**A.M., through her Guardian ad Litem,
Joleen Youngers,**

      **Plaintiff,**

**v.**                         **No. 2:13-CV-00692  JB/WPL**

**NEW MEXICO DEPARTMENT OF HEALTH,
et al.,**

      **Defendants.**

### INDIVIDUAL DOH DEFENDANTS' MOTION AND MEMORANDUM TO DISMISS PLAINTIFF'S COURT ACCESS CLAIMS UNDER THE FIRST AND FOURTEENTH AMENDMENTS ON THE BASIS OF QUALIFIED IMMUNITY

COME NOW Defendants Beth Schaefer, Dan Sandoval, Roger Adams and Joseph Mateju (the "individual DOH Defendants"), through their undersigned counsel, Montgomery & Andrews, P.A. (Stephen S. Hamilton, Esq. and Alexia Constantaras, Esq.) and pursuant to Fed. R. Civ. P. 12(b)(6) hereby move the Court for an order dismissing Plaintiff's court access claims as set forth in her First and Second Causes of Action, brought pursuant to the First and Fourteenth Amendment of the United States Constitution, on the basis of qualified immunity.

Pursuant to LR-CV 7.1(a), concurrence of Plaintiff was sought in this motion, but no response was received.

### I. STANDARD OF REVIEW

In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007), the United States Supreme Court changed the way a motion to dismiss is analyzed. A complaint must now plead facts sufficient "to state a 'claim of relief that is plausible on its face.'" *Aschcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly,* 550 U.S. at 570). Sufficient factual allegations "require

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.,* 550 U.S. at 555-56.  In other words, the allegations must be sufficient enough that, "if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim of relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008); *Ridge at Red Hawk, L.L.C. v. Sneider,* 493 F.3d 1174, 1177 (10th Cir. 2007)(the mere metaphysical possibility that a plaintiff could prove some set of facts in support of her claims is insufficient).  Plaintiff's complaint must give the court reasons to believe that the plaintiff has a reasonable likelihood of mustering factual support for the claims asserted.  *Id.*  "Where the well pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief." *Ashcroft,* 556 U.S. at 679.

Although the same standard of review applies in evaluating dismissals in qualified immunity cases and in dismissals generally, when a qualified immunity defense is raised there is a greater likelihood of failure in the plausibility of the complaint because constitutional claims are typically complex and involve multiple defendants. *Robbins, supra,* 519 F.3d at 1249.  Therefore, the standard set forth in *Twombly, supra,* has a greater bite in the qualified immunity context.  *Id.*

## II.  LEGAL STANDARD REGARDING QUALIFIED IMMUNITY

Qualified immunity shields state officials from liability for civil damages if they violate a plaintiff's federally protected rights so long as the state officials did not violate clearly established law.  *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987).   "[G]overnmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 808, 818 (1982).   Qualified immunity is designed to prevent the "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service."  *Harlow, supra,* 457 U.S. at 816.  The doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.  *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed. 2d 895 (1978).  Thus, "[t]he doctrine seeks to balance the protection of constitutional rights and the 'substantial social costs' of imposing liability on public officials."  *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006) (citing *Anderson, supra,* 483 U.S. at 638).

"In analyzing the qualified immunity defense, [the Tenth Circuit] court has adopted a three-part inquiry:

> First, we ask whether the plaintiffs' allegations, if true, establish a constitutional violation. If the allegations do not meet that standard, we must dismiss the claim. Second, if the [plaintiff has] alleged a constitutional violation, we examine "whether the law was clearly established at the time the alleged violations occurred." The law is clearly established if a reasonable official in the defendant's circumstances would understand that her conduct violated the plaintiff's constitutional right. * * * [T]he defendant official may demonstrate that she "neither knew nor should have known of the relevant legal standard" because the law was not clearly established at the time she acted. **If the law is not clearly established, we "do not require officials to anticipate its future developments."** Finally, if the law was clearly established, we proceed to the third part of the inquiry.  We ask whether, in spite of the fact that the law was clearly established, "extraordinary circumstances"--such as reliance on the advice of counsel or on a statute---"so prevented [the official] from knowing that [her] actions were unconstitutional that [she] should not be imputed with knowledge of a clearly established right."

*Gomes, supra,* 451 F.3d at 1134. (internal citations omitted)(emphasis added in bold).

"Unless [these] prongs are satisfied, the defendant[s] will not be required to 'engage in expensive and time consuming preparation to defend the suit on its merits.'" *Id.* (citation omitted).  A court has the discretion to decide which of the three prongs of the qualified immunity analysis to tackle first.  *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).  If a court finds the law was not clearly established at the time of the challenged conduct, it may end the inquiry there. *Id.*

A law is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the clearly established weight of authority from other courts sufficiently defines the right. *Farmer v. Perrill,* 288 F. 3d 1254, 1259 (10th Cir. 2002).  Precedent existing at the time of the challenged conduct must have placed the constitutional question beyond debate.  *Aschcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011).  A clearly established right is a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." *Zweibon v. Mitchell,* 720 F.2d 162, 172-72 (D.C. Cir. 1983), *cert. denied,* 469 U.S. 880, 105 S. Ct. 244, 83 L.Ed. 2d 182 (1984).

Accordingly, it is Plaintiff's burden in this case to point to United States Supreme Court or Tenth Circuit precedent establishing the "indisputable" and "unquestioned" right she claims the individual DOH Defendants violated when they allegedly discharged her pursuant to a state district court order to the Homestead House in 1979.  *Pearson, supra,* 555 U.S. at 232.  This is a heavy burden.  *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1186 (10th Cir. 2011). The Tenth Circuit has held that:

> [P]laintiff must do more than identify a clearly established legal test and then allege that the defendant has violated it.  The plaintiff must

4

> demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'

*Hannula v. City of Lakewood,* 907 F.2d 129, 131 (10th Cir. 1990)(quoting *Anderson v. Creighton,* 438 U.S. 635, 640 (1987)).

There is a strong presumption in favor of finding qualified immunity, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id.* Simply stated, qualified immunity ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001).

### III.  LEGAL ARGUMENT

**A.  The Individual DOH Defendants Are Entitled to Qualified Immunity With Regard to Plaintiff's Claim of Denial of Her Right to Court Access Pursuant to the First Amendment (Second Cause of Action).**

In her Amended Complaint, Plaintiff has alleged a right to be "represented and redressed in court" in her Second Cause of Action brought pursuant to the First Amendment. [Doc.1-2, ¶ 142]. She does not bring a Fifth Amendment court access claim. [Doc.1-2, ¶ 32, asserting claims under the First, Fourth, Thirteenth, and Fourteenth Amendments only of the United States Constitution]. Indeed, Plaintiff reiterates this limitation in her Response at p. 10, "Accordingly, Defendants' actions to "discharge" Plaintiff from legal custody and oversight, without bringing the matter before any court, unquestionably violated Plaintiff's clearly established *First Amendment* rights." [Doc. 37, p. 10]

5

To maintain a First Amendment court access claim, there must be actual injury. *Ali v. District of Columbia,* 278 F.3d 1, 8 (D.C. Cir. 2002). Actual injury means an actionable claim that a person desired to bring was lost or rejected, or that the presentation of the claim is currently being prevented. *Id.* Specifically, the Supreme Court held that "[a] claim for denial of access may be brought where (1) systemic official action frustrates a plaintiff in preparing and filing suits, such as denial of access to a law library or (2) official action precludes a claim resulting in the loss or inadequate settlement of a meritorious case or the loss of the opportunity to bring suit." *Christopher v. Harbury,* 536 U.S. 403, 412-14 (2002). The Tenth Circuit characterized the actual inquiry as follows: plaintiff "must show that any denial or delay of access to court prejudiced [her] in pursuing litigation." *Trujillo v. Williams,* 465 F.3d 1210, 1226 (10th Cir. 2006). Nowhere in her Amended Complaint has Plaintiff alleged that a denial of court access prejudiced her in pursuing litigation, and the instant lawsuit, belies such claim.

Although Plaintiff contends she is bringing a First Amendment court access claim, the cases on which she relies in Response [Doc. 37] to the *Individual DOH Defendants' Motion to Dismiss Plaintiff's First Amendment and Fourth Amendment Claims On the Basis of Qualified Immunity* [Doc. 24] are not decisions analyzed under the First Amendment. For example, *Ward v. Kort,* 762 F.2d 856, 858 (10th Cir. 1985) and *Silver v. Cormier,* 529 F.2d 161 (10th Cir. 1976), are Fourteenth and Fifth Amendment cases, not a First Amendment right to petition case. Likewise, *Bounds v. Smith,* 430 U.S. 817 (1977), *Burns v. Ohio,* 360 U.S. 252 (1959), *Smith v. Bennett,* 365 U.S. 708 (1961), *Jackson v. Indiana,* 406 U.S. 715 (1972), *O'Connor v. Donaldson,* 422 U.S. 563 (1975), *Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir. 1968), *In re Gault,* 387 U.S. 1 (1967), *Boddie v. Connecticut,* 401 U.S. 371, *Moore v. Guthrie,* 438 F.3d 1036 (10th Cir.

2006), and *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306 (1950), are all Fourteenth Amendment due process cases. *Clark v. Cohen,* 613 F. Supp. 684 (E.D. Pa. 1985), *aff'd,* 794 F.2d 79 (3rd Cir. 1986), is a Rehabilitation Act case. *Ahern v. Veterans Admin.,* 537 F.2d 1098 (10th Cir. 1976) and *Woods v. Brumlop,* 71 N.M. 221, 377 P.2d 520 (1962) are medical malpractice tort cases. Accordingly, none of these cases on which Plaintiff relies is pertinent to a First Amendment analysis.

It is Plaintiff's burden to find United States Supreme Court or Tenth Circuit precedent establishing a First Amendment court access claim in 1979. Notably, Plaintiff does not cite to a single Supreme Court case or Tenth Circuit decision showing a clearly established First Amendment court access right established pursuant to the First Amendment in 1979 when Plaintiff was allegedly discharged.

  **B.**  **The Individual DOH Defendants Are Entitled to Qualified Immunity With Regard to a Court Access Claim Brought Under The Fourteenth Amendment (First Cause of Action).**

Plaintiff also references her right to "adequate, effective and meaningful access to the judicial system to litigate violations of her fundamental constitutional rights" in her First Cause of Action of her Amended Complaint, brought pursuant to the Fourteenth Amendment. [Doc.1-2, ¶ 135] Plaintiff had no clearly established, constitutionally protected, property interest in court access at the time of her alleged discharge and/or placement with Mary Evans at the Homestead House in 1979. In *Jennings v. City of Stillwater,* 383 F.3d 1199, 1208-09 (10th Cir. 2004), the Tenth Circuit, although discussing the nature of an alleged constitutional right to access to the courts, was careful not to endorse the validity of such a claim. Instead, the *Jennings* court assumed, without deciding, the existence of such a constitutional right. *Id.* The

Tenth Circuit relied on the Supreme Court's decision in *Christopher v. Harbury,* 536 U.S. 403, 413-14 (2002), which similarly assumed that an "access to the courts" claim existed, and then proceeded to discuss the claim. *Id.*

Given, however, that the existence of an "access to the courts" claim pursuant to the Fourteenth Amendment remained undecided as late as 2002 in the Supreme Court and 2004 in the Tenth Circuit, there was no clearly established "access to the court" right before 1979, when Plaintiff was allegedly discharged and/or allegedly placed with Mary Evans at the Homestead House.  Accordingly, the Individual DOH Defendants are entitled to qualified immunity from any Fourteenth Amendment claim that they interfered with Plaintiff's access to the courts during that time period. *See Harlow, supra,* 457 U.S. at 818.

The circumstances in which a plaintiff can succeed on a claim for deprivation of a constitutional right of access to the courts are very limited, even assuming such a right exists. *Jennings, supra,* 383 F.3d at 1208.  The Tenth Circuit interpreted *Harbury, supra,* as creating two categories of claims arising from denial of a right of court access, assuming such claims were viable: "forward looking claims," in which official action frustrates a plaintiff's ability to bring suit at the present time, and "backwards looking claims," in which a plaintiff alleges that a specific claim cannot be tried because past official action caused the loss or inadequate settlement of a meritorious case. *Jennings, supra,* 383 F.3d at 1208.  Plaintiff does not allege in this case a "forward looking claim," in which she asserts her ability to bring suit has been thwarted.  Even had Plaintiff alleged such a claim, this lawsuit evidences that fallacy.

Plaintiff's alleged injury is also not a "backwards looking claim."  Classic examples of "backwards looking claims" include suits asserting the denial of law library privileges that

8

prevents prisoners from effectively filing claims of alleged prison abuse. *Id.* An element of any "backwards looking claim" requires the plaintiff to identify a remedy that would not otherwise be available in a lawsuit that could be brought. *Id.* at 1209. In *Jennings,* for example, the Tenth Circuit held that the plaintiff's "backwards looking claim" for denial of access to the courts failed because the only remedy that could conceivably be awarded were the same damages that the plaintiff had already obtained in a different lawsuit. *Id.*

In this case, Plaintiff has not alleged anywhere in her Amended Complaint [Doc.1-2], any remedy for a court access claim that would not be otherwise available by virtue of the other claims brought in this lawsuit. When there is no point in spending time and money to litigate facts constituting denial of access because a plaintiff could end up just as well off after litigating a simpler case without the "denial of access" issue, dismissal of the claim is warranted. *Harbury,* 536 U.S. at 415; *Jennings,* 383 F.3d at 1209. Such is the case here. Although Plaintiff analyzed at length the right of access to the court in her Response [Doc. 37] to the *Individual DOH Defendants' Motion to Dismiss Plaintiff's First Amendment and Fourth Amendment Claims On the Basis of Qualified Immunity* [Doc. 24], she ignored the requirement of actual damages. Even assuming, *arguendo*, that a court access claim under the Fourteenth Amendment existed in 1979, Plaintiff cannot overcome qualified immunity based only on the existence of such a right without allegations of actual damages.

With regard to the Fourteenth Amendment cases Plaintiff relies on in her Response [Doc. 37] to the *Individual DOH Defendants' Motion to Dismiss Plaintiff's First Amendment and Fourth Amendment Claims On the Basis of Qualified Immunity* [Doc. 24] they are either cases involving a prisoner's right of access to courts while incarcerated, or are not analogous to the

facts alleged in this case. For example, *Bounds v. Smith,* 430 U.S. 817 (1977), *Smith v. Bennett,* 365 U.S. 708 (1961), *Burns v. Ohio,* 360 U.S. 252 (1959) and *Ward v. Kort,* 762 F.2d 856, 858 (10th Cir. 1985), all involved a prisoner's right to access to the courts.

*O'Connor v. Donaldson,* 422 U.S. 563 (1975) was not a court access case, but, rather, involved a mental patient's due process liberty interest in being free from institutional confinement.

In *Jackson v. Indiana,* 406 U.S. 715 (1972), the due process question did not involve access to the courts but whether the defendant's commitment violated his due process rights because its nature and duration did not bear a reasonable relation to the purpose of which he was committed.

*Boddie v. Connecticut,* 401 U.S. 371 (1971) held that the refusal to admit indigents to its courts, the sole means for obtaining a divorce, violated their due process rights to be heard upon their right to a dissolution of their marriages.

*In re Gault,* 387 U.S. 1 (1967) was not a court access case because the issues addressed were due process deprivations during actual court proceedings (e.g. service of the initial delinquency petition, notice of the right to counsel, right of confrontation during juvenile court hearings, and privilege against self-incrimination).

*Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306 (1950) involved the constitutionality of a statute setting forth the required notice to trust beneficiaries.

*Moore v. Guthrie,* 438 F.3d 1036 (10th Cir. 2006) was a substantive due process case involving liberty interests, not a court access case.

*Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir. 1968) involved the Fourteenth Amendment entitlement to be advised of a right to counsel during involuntary commitment proceedings.

*Silver v. Cormier,* 529 F.2d 161 (10th Cir. 1976) was a retaliation case involving court access in which a public official threatened a citizen to withhold money owing if legal proceedings were instituted.

What all the above-referenced cases have in common, to the extent they even involve an issue of court access in the context of confinement, are claims to a right to court access which were allegedly violated either during confinement or during proceedings to involuntarily confine the plaintiff. Here, even if a right to access to the courts had been clearly established before 1979, decisions involving court access during or preceding a transfer would not have placed a reasonable official on notice as to court access rights *upon release* from confinement.

Since a Fourteenth Amendment right of access to the courts upon release from a state institution was not clearly established before 1979 and because Plaintiff has failed to allege the type of actual injury necessary to sustain such a claim, the Individual DOH Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For the reasons cited herein, Plaintiff's court access claims as asserted in her First and Second Causes of Action in her Amended Complaint, whether brought under the First or Fourteenth Amendment, should be dismissed with prejudice against the Individual DOH Defendants.

WHEREFORE, the Individual DOH Defendants Beth Schaefer, Dan Sandoval, Roger Adams and Joseph Mateju respectfully request the Court to grant their Motion and their request for qualified immunity, to dismiss Plaintiff's First and Fourteenth Amendment court access claims against them, and for such further relief as the Court deems just and proper.

        Respectfully submitted,

        MONTGOMERY & ANDREWS, P.A.

    By: _/s/ Alexia Constantaras_____
        Stephen S. Hamilton
        Alexia Constantaras
        Post Office Box 2307
        Santa Fe, NM 87504-2307
        (505) 982-3873
        shamilton@montand.com
        aconstantaras@montand.com
    Attorneys for Defendants

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 23, 2014, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

        _/s/ Alexia Constantaras_____
        Alexia Constantaras